Leonard FAMBO, Petitioner,

v.

Harold J. SMITH, Superintendent, Attica
Correctional Facility, Respondent.

No. Civ–76–4.

United States District Court,
W. D. New York.

June 23, 1977.

Philip B. Abramowitz, Buffalo, N. Y., for petitioner.

Louis J. Lefkowitz, Atty. Gen. of the State of N. Y. (James L. Kennedy, Buffalo, N. Y., of counsel), for respondent.

CURTIN, Chief Judge.

Petitioner Leonard Fambo has applied to this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was indicted, along with two others, in the Onondaga County Court in April 1971, for two violations of former § 265.05(7) of the New York Penal Law. Former § 265.05(7) (now recodified as § 265.04) provided that "any person who has in his possession any explosive substance with intent to use the same unlawfully against the person or property of another . . . is guilty of a class B felony" (McKinney's 1967). The first count of the indictment charged the petitioner with possession of an explosive substance on November 29, 1970. The second count charged him with an identical violation on December 1, 1970.

At his arraignment in May 1971, petitioner entered a plea of not guilty to the crimes charged in the indictment. However, on October 27, 1972, following a conference among the petitioner, his attorney, the Onondaga County Assistant District Attorney, and the Hon. Ormond N. Gale, Onondaga County Court Judge, petitioner entered a plea of guilty for possession of an incendiary device in violation of former § 265.05(1) of the Penal Law, in satisfaction of both original charges. Former § 265.05(1) [now recodified as § 265.02(2)] provided that "any person who has in his possession any explosive or incendiary bomb . . . is guilty of a class D felony" (McKinney's 1967).

Judge Gale accepted the guilty plea and petitioner was subsequently sentenced on December 27, 1972 to an indeterminate term of imprisonment, the maximum of which was to be five years. Petitioner is currently on parole under the supervision of the New York State Department of Correctional Services.

Petitioner did not appeal his conviction. He exhausted his state post-conviction remedies subsequent to filing his petition for relief in this court. Petitioner's motion to set aside his guilty plea, pursuant to New York's Criminal Procedure Law § 440.10, was denied by Judge Gale on March 10, 1976. Leave to appeal that order was denied on April 6, 1976 by Associate Justice Walter J. Mahoney, Supreme Court, Appellate Division, Fourth Department.

Petitioner asserts that he has been deprived of his liberty in violation of the fourth, sixth, eighth and fourteenth amendments to the United States Constitution. He presents certain facts which allegedly were unknown to him at the time he pleaded guilty, and of which he did not learn until March 27, 1974, in an unrelated trial before this court in which petitioner was a defendant and in which he was acquitted on all counts. *See United States of America v. Bufalino*, CR–1973–175 (W.D.N.Y.1974). Specifically, petitioner alleges that during the course of the *Bufalino* trial, a member of the Onondaga County Sheriff's Department, Sergeant David A. Stevenson, testified that, on November 29, 1970, a tube of dynamite was found in a field in Onondaga County; that the contents of the tube were removed and destroyed and that the tube was repacked with sawdust and returned on December 1, 1970 to the place where it had been discovered. *See United States v. Bufalino, supra*, Testimony of David Stevenson, 3/27/74, Trial Transcript at 55, 56, 61. Petitioner asserts that this tube of dynamite is the exact same explosive substance and/or incendiary device for which he was charged with criminal possession. Respondent's memorandum of law concedes the truth of this allegation. *See* Respondent's Memorandum of Law at 4.

Petitioner argues further that his plea of guilty was entered without knowledge of this apparently exculpatory evidence and that his plea of guilty therefore does not meet the constitutional requirement that the plea be voluntarily, intelligently and knowingly entered. *See Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). Petitioner alleges that the Assistant District Attorney of Onondaga County failed to disclose this exculpatory information to anyone at the time of the plea, and that he represented to the petitioner at that time that his office did in fact have the dynamite on which the two counts in the indictment were based. Petitioner and his trial counsel, Mr. Salten Rodenberg, have asserted that the guilty plea was produced directly as a result of the prosecutor's failure to disclose the fact that the district attorney's office did not have the dynamite which petitioner had originally been charged with possessing and which had been destroyed *prior* to petitioner's arrest, and the concomitant failure to disclose the fact that the substance possessed on the date charged in the second count of the indictment was merely sawdust.

Respondent disputes these claims by petitioner and contends that the prosecutor had no duty in this case to disclose this evidence prior to or during the course of plea bargaining.

Finally, petitioner claims that the facts of this case are logically inconsistent with the valid establishment of factual guilt and that he was convicted, sentenced and is, in effect, presently being deprived of his liberty merely for possession of sawdust.

Prior to accepting the petitioner's guilty plea, the trial judge questioned petitioner under oath. Petitioner testified that he was aware that the maximum possible sentence for the D felony of possession of an incendiary device was seven years in prison, and that on the recommendation of the District Attorney the sentence imposed, based upon his conviction following his guilty plea, would not exceed five years. Petitioner indicated on the record that he understood that the guilty plea would con-

stitute a waiver of his right to a trial by jury. He also acknowledged that he had conferred at length with his counsel prior to the plea proceedings. *See People of the State of New York v. Leonard Fambo*, Ind. No. 71–142, Transcript of Plea Proceeding (10/27/72) at 1–3.

■ The trial court did not explore on the record the proof of the crimes charged that was available to the District Attorney, nor did the court establish a factual basis for the guilty plea since such was not required by New York State law. [*See People v. Griffin*, 7 N.Y.2d 511, 199 N.Y.S.2d 674, 166 N.E.2d 684 (1960); *People v. Clairborne*, 29 N.Y.2d 950, 329 N.Y.S.2d 580, 280 N.E.2d 366 (1972). *Cf.* Federal Rules of Criminal Procedure, Rule 11.][1] Nor did the trial court make an on-the-record attempt to satisfy itself that the defendant understood the nature of the charges or that the defendant was aware of the acts sufficient to constitute the offenses for which he was charged [*see Boykin v. Alabama*, 395 U.S. 238, 244, n. 7, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)], other than to assure itself that petitioner had conferred at length with counsel on this matter. None of these matters were explored further at the sentencing proceeding.

On the record of the plea and sentencing proceedings alone, it would appear that petitioner's decision to plead guilty was a willing and voluntary choice made by petitioner from among alternative courses of action. Petitioner was represented throughout the proceedings by competent counsel. The record contains no evidence of coercion. Petitioner knew what his maximum punishment might be and he indicated that he was aware that he was waiving his right to a trial by jury.

In light of these facts the principal question yet to be resolved is whether or not the District Attorney's failure to disclose to petitioner that the damaging evidence (*i. e.*, the dynamite) had previously been destroyed renders petitioner's subsequent guilty plea constitutionally invalid under the standards which require that a guilty plea be entered in a voluntary, knowing and intelligent manner. *See Machibroda v. United States, supra; Boykin v. Alabama, supra*, 395 U.S. at 242–44, 89 S.Ct. 1709 (1969); *Saddler v. United States*, 531 F.2d 83 (2d Cir. 1976); *Ferguson v. United States*, 513 F.2d 1011 (2d Cir. 1975); *Irizarry v. United States*, 508 F.2d 960 (2d Cir. 1974); *United States ex rel. Curtis v. Zelker*, 466 F.2d 1092 (2d Cir. 1972); *United States v. Malcolm*, 432 F.2d 809 (2d Cir. 1970).

Before exploring the relationship between the District Attorney's failure to disclose important evidence and the validity of petitioner's guilty plea, it is appropriate initially to address the question of whether petitioner's guilty plea to the felony charge entered in Onondaga County Court in 1972 now precludes him from raising his constitutional claims in this federal habeas corpus proceeding. In a series of cases beginning with *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the United States Supreme Court has recognized that by pleading guilty the defendant waives the right to later assert that certain constitutional or factual infirmities which existed in his case prior to his plea now require that the conviction be overturned. *See also McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *Tollett v.*

---

1. Respondent's reference to the New York rule that a bargained-for guilty plea to a lesser crime makes unnecessary a factual basis for the particular crime confessed (*see People v. Griffin, supra; People v. Clairborne, supra*), is not dispositive of the issue presented here. I do not find that New York State courts must follow the practice of the federal courts under the Federal Rules of Criminal Procedure, Rule 11 [*see McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)], and

establish on the record that a factual basis for the guilty plea exists, although the facts of this case demonstrate the usefulness of such a requirement. (*Cf.*, Comment, 59 Calif.L.Rev. 962, 981 (1971), which suggests that *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.E.2d 747, and *Boykin v. Alabama, supra*, give the factual basis requirement a constitutional dimension.)

*Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

More recently, the Supreme Court has offered some guidance as to when it is appropriate to apply the rulings of these cases:

> Neither *Tollett v. Henderson,* [citations omitted], nor our earlier cases on which it relied, *e. g., Brady v. United States* [citations omitted], and *McMann v. Richardson* [citations omitted], stand for the proposition that counseled guilty pleas inevitably "waive" all antecedent constitutional violations. . . . The point of these cases is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. *A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established.*
>
> *Menna v. New York,* 423 U.S. 61, 62–63, n. 2, 96 S.Ct. 241, 242, 46 L.Ed.2d 195 (1975). [Emphasis added.]

■ As with the case before me, the cases of the *Brady* trilogy and *Tollett v. Henderson* all dealt with efforts by defendants to withdraw guilty pleas years after conviction. However, in those Supreme Court decisions it was determined that the guilty pleas were perfectly valid when initially entered. These cases do not foreclose inquiry into the nature of petitioner's guilty plea here. Since petitioner's claim is that his plea of guilty was not valid when entered into because it was not voluntary, knowing and intelligent, the *Brady* trilogy and *Tollett v. Henderson* do not act as a bar to consideration of petitioner's claims in this proceeding.

■ A guilty plea is "a grave and solemn act to be accepted only with care and discernment" because "the plea is more than an admission of past conduct; it is the defendant's consent that judgment of con-

viction may be entered without a trial." *Brady v. United States, supra,* 397 U.S. at 748, 90 S.Ct. at 1469. Not only does a guilty plea constitute a waiver of the fundamental right to a jury trial [*see Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)], but such action by a defendant also constitutes a waiver of one's right to remain silent [*Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)], to confront one's accusers [*Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)], to present witnesses in one's defense [*Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)], and to be convicted by proof beyond all reasonable doubt [*In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)].

■ Since *Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927), the Supreme Court has recognized that "unfairly obtained" guilty pleas in the federal courts ought to be vacated. In *Boykin v. Alabama, supra,* the Supreme Court recognized that the question of whether a guilty plea, entered in a state court, is voluntary, knowing and intelligent involves federal constitutional rights and is governed by federal standards. For the waiver which a guilty plea represents to be valid under the Due Process Clause, it must be "an intentional relinquishment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

■ The test for determining the validity of a guilty plea has been succinctly summarized in *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970):

> The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.

*See also Saddler v. United States, supra; United States ex rel. Curtis v. Zelker, supra; Warren v. Hogan,* 373 F.Supp. 1241 (S.D.N.Y.1974). A guilty plea may not stand if it is induced by threats, misrepresentation, or improper promises. *See Brady*

*v. United States, supra,* 397 U.S. at 755, 90 S.Ct. 1463, citing with approval Judge Tuttle's decision in *Shelton v. United States,* 246 F.2d 571, 572 n. 2 (5th Cir. 1957), *rev'd,* 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958). The plea must be entered by a defendant who understands the situation and who has been neither deceived nor coerced. *Schnautz v. Beto,* 416 F.2d 214, 216 (5th Cir. 1969). A guilty plea may not be the product of incomprehension on the part of the defendant (*Boykin v. Alabama, supra,* 395 U.S. at 243, 89 S.Ct. 1709). A guilty plea which is "the tainted product of ignorance" is also void. *United States v. Malcolm,* 432 F.2d 809, 811 (2d Cir. 1970). All relevant circumstances surrounding the plea must be considered in determining whether it was voluntary, knowing and intelligent in nature. *See Brady v. United States, supra; United States ex rel. McArthur v. Rundle,* 402 F.2d 701, 708 (3d Cir. 1968).

Petitioner relies primarily on the revelations of the testimony of Sergeant Stevenson in the *Bufalino* trial, as previously recounted, to support his claim before this court. Petitioner's trial counsel concurs in petitioner's affidavit and has stated further that his former client's decision to plead guilty in Onondaga County Court was based on their mutual belief that dynamite was in fact present in the contested tube.

The respondent in this action has failed to controvert any of these statements made by petitioner or his trial counsel.

The record of the *Bufalino* trial supports petitioner's allegation and belief that the "explosive substance," which petitioner was charged with possessing, and the "incendiary device," which petitioner pleaded guilty to possessing, were in fact a single tube of sawdust which Sergeant Stevenson testified he had replaced under a rock in a field in Onondaga County. As previously indicated, respondent concedes the truth of this allegation. Nor has respondent urged in this action that the contested tube contained anything other than sawdust as petitioner alleges, an allegation that the *Bufalino* record supports.[2]

The final substantial factual dispute relates to the nature of certain information that the Assistant District Attorney allegedly made available to petitioner before petitioner entered his guilty plea. By his affidavit referred to above, petitioner's trial counsel has stated that, prior to entering the guilty plea, a conference of substantial length was held among all the attorneys, the District Attorney of Onondaga County, County Court Judge Ormond N. Gale and the defendant in that matter.

Petitioner's trial counsel has stated in his affidavit before this court:

At that conference the District Attorney made sure that it was clearly understood by all the conferees that the District At-

---

**2.** However, a laboratory report submitted with the affidavit of John M. Shannon, Chief Assistant District Attorney for Onondaga County, in opposition to defendant's CPL § 440.10 motion, indicates that, in fact, an undetermined amount of nitroglycerine was found in the tube as well as a quantity of wood shavings. That report indicates that the contents of the contested tube were analyzed by the Syracuse Police Department Crime Laboratory and that the contents of the tube were found to consist of wood shavings and brown, dried chunks and yellow particles. The report, submitted on October 26, 1972 concluded that "nitroglycerine was detected in the brown chunks inside the cardboard tube. Nitroglycerine is explosive. The lower portion of the tube was packed with wood shavings and small metal caps."

I find this report to be, at best, inconclusive and uninformative. The general observation that "nitroglycerine is explosive" is one of common knowledge and sheds no light on the problem of whether or not this tube, packed with sawdust and some particles of nitroglycerine and sulphur, could be classified as an explosive or an incendiary device. Labor Law § 451 (McKinney's Supp.1976), and Vehicle and Traffic Law § 115 (McKinney's 1970) define "explosives" to require a sufficient quantity of the designated material to in fact cause an explosion. This laboratory report is of no aid to the court in resolving this factual dispute. Since the device testified to by Sergeant Stevenson in the *Bufalino* trial was the same device, possession of which petitioner pleaded guilty to, I rely on Sergeant Stevenson's sworn testimony in the *Bufalino* case and I find that the dynamite was, in fact, removed from the contested tube on November 29, 1970, was subsequently destroyed and was replaced with sawdust by Sergeant Stevenson.

torney did, in fact, have the dynamite, which was mentioned in Counts I and II of the Indictment.

(Affidavit of Salten Rodenberg, 1/16/76.) Respondent has not controverted this claim by petitioner's trial counsel made here. However, Chief Assistant District Attorney Shannon, in his affidavit in opposition to defendant's C.P.L. § 440.10 motion, has stated that "the factual basis of the indictment was not discussed in detail and deponent did not make any specific statements regarding the presence of dynamite." (Affidavit of John M. Shannon, 2/24/76.) Mr. Shannon's affidavit is before the court as part of the record in this habeas corpus action.

Based on counsels' affidavits, I find that the Assistant District Attorney did not positively represent to petitioner or his attorney that he did in fact have the contested dynamite in his possession at the time that the guilty plea was entered.

Since the essential factual allegations are either not contested here, or have been resolved for the purposes of this decision, a further evidentiary hearing is not warranted before reaching a decision in this matter. *See generally Townsend v. Sarn*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). In addition, petitioner has not requested that the court hold such an evidentiary hearing.

I conclude on this record that petitioner has satisfied the requirement that he demonstrate that "substantial objective proof" exists which supports his claim that the contested dynamite had been destroyed on or after November 29, 1970 and that sawdust had been substituted in the contested tube on November 29, 1970, and that, at the time he entered his guilty plea, petitioner was unaware of this fact. *See United States ex rel. Curtis v. Zelker, supra*, at 1098; *United States ex rel. Oliver v. Vincent*, 498 F.2d 340 (2d Cir. 1974); *Mosher v. Lavallee*, 491 F.2d 1346, 1348 (2d Cir.), *cert. denied*, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974); *United States ex rel. LaFay v. Fritz*, 455 F.2d 297 (2d Cir.), *cert. denied*, 407 U.S. 923, 92 S.Ct. 2471, 32 L.Ed.2d 809 (1972); *United States ex rel.*

*Scott v. Mancusi*, 429 F.2d 104 (2d Cir. 1970), *cert. denied*, 402 U.S. 909, 91 S.Ct. 1385, 28 L.Ed.2d 651 (1971).

The next question is whether or not the Assistant District Attorney had an affirmative obligation to divulge evidence which was exculpatory of certain elements of the second count of the original indictment and, if so, whether such failure by the Assistant District Attorney to fulfill this obligation was a crucial factor which would require the writ to issue in this case.

Relying on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, petitioner argues that, under the circumstances of this case, the prosecutor had an affirmative duty to disclose any clearly exculpatory evidence to the defense counsel. *See also Giles v. Maryland*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).

In this case there can be no question that the evidence (the fact that the contested tube actually contained sawdust rather than dynamite at the time that the petitioner was apprehended) was of a favorable character to the defense and was of a material nature as well. However, petitioner's counsel made no production request at any time during the state proceedings, nor was a request made for discovery of the grand jury minutes which might have indicated whether there was sufficient evidence for the indictment.

In *United States ex rel. Meers v. Wilkins*, 326 F.2d 135 (2d Cir. 1964), the Second Circuit Court of Appeals found itself confronted with a case that differed from *Brady v. Maryland, supra*, in that Meers' defense counsel had never requested the disclosure of evidence from the prosecution. In that case the court recognized that "such request is not a *sine qua non* to establish a duty on the prosecution's part." 326 F.2d at 137, *et seq.* (and cases cited therein). In *United States v. Keogh*, 391 F.2d 138 (2d Cir. 1968), the Second Circuit recognized that a prosecutor is bound to disclose to an accused "evidence whose high value to the defense could not have escaped the prosecu-

tor's attention." 391 F.2d at 147 (and cases cited therein). The court classified suppression by the prosecutor under such circumstances as "deliberate." The court also recognized that, even where suppression was not deliberate, in the sense indicated above, and where no request for disclosure had been made by the defense, "but where hindsight discloses that the defense could have put the evidence to not insignificant use," relief may be granted in such cases where the evidence is highly material. *Id.* at 147. Evaluating the nature of the evidence which the district attorney failed to make available to the accused in this case, it is obvious that this evidence would have been helpful to the petitioner in establishing a defense to certain elements of the crime which he was charged with committing on December 1, 1970.

More recently, in the context of a claim that a prosecutor's non-disclosure resulted in a denial of the defendant's right to a fair trial, the United States Supreme Court has recognized that

> if the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, that duty should equally arise even if no request is made. . . . [T]here is no significant difference between cases in which there has been merely a general request for exculpatory matter and cases . . . in which there has been no request at all.

*United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). Since this new ruling is clearly designed to enhance the reliability of the guilt determination process, there are strong reasons arguing for retroactive application of the principle articulated in *Agurs. See Stovall v. Denno,* 388 U.S. 293, 298, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Desist v. United States,* 394 U.S. 244, 249, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). While I find the reasoning of the Supreme Court to be most persuasive and applicable to the facts of the case before me, I need not resolve the issue of its retroactive application here since the decisions of the Second Circuit referred to

above lead me to conclude that the prosecutor should have disclosed the exculpatory evidence to the defense under the circumstances presented by this case since the "evidence" (or the lack thereof) was supportive of a claim of innocence to the original charge in the second count of the indictment.

*Brady v. Maryland, Meers, Keogh,* and *Agurs, supra,* are all founded on the recognition that an accused is guaranteed certain due process protection and the right to a fair trial. Had there been a trial and convictions on the original charges in the case before me, it is obvious that under these Second Circuit opinions and the *Agurs* case, the prosecutor's failure to disclose such favorable evidence would have resulted in violations of petitioner's constitutional rights to due process and fair trial. Upon his arrest, petitioner pled not guilty, thereby invoking his right to a fair trial and to the other constitutional safeguards consistent with the fair trial guarantee. He did not change his plea until the matter had proceeded to the point that trial was imminent. During the period that petitioner was preparing for trial, plea bargaining was engaged in, as evidenced by the guilty plea that was finally entered on the very day that petitioner's case was scheduled to go to trial. During that period of plea negotiation and trial preparation, petitioner and his defense counsel were without the benefit of the knowledge that, prior to petitioner's arrest, sawdust had been substituted for the explosive material which petitioner was subsequently charged with having possessed on December 1, 1970.

A majority of criminal convictions in this court, and in the other federal and state courts as well, are based on guilty pleas. *See, e. g.,* Note, "Plea Bargaining and the Transformation of the Criminal Process," 90 Harv.L.Rev. 564 (1977). Plea bargaining has long been a widespread and entrenched practice in our criminal justice system. *See* Comment, "The Plea Bargain in Historical Perspective," 23 Buffalo L.Rev. 499 (1974). The United States Supreme Court has recognized that plea bargaining

is an essential component of the administration of justice. Properly administered, it is to be encouraged. . . .

Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons.

*Santobello v. New York*, 404 U.S. 257, 260–61, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).

By agreeing to accept a bargained-for plea, the prosecutor saves the state the expense of a trial and arranges for the prompt, efficient and usually final disposition of most criminal cases. As the facts of this case demonstrate, by choosing to enter a bargained-for plea, a defendant will often gain the advantage of having multiple charges effaced and will avoid the possibility of a more severe sentence should he go to trial.

 However, as the Supreme Court has recognized, the benefits that accrue to both the state and to the accused "presuppose fairness in securing agreement between an accused and a prosecutor." *Santobello v. New York, supra*, at 261, 92 S.Ct. at 498. As is the case with all guilty pleas, those that are a result of the plea bargaining process are to be accorded considerable solicitude by the courts. *Boykin v. Alabama, supra*, 395 U.S. at 243–4, 89 S.Ct. 1709. This method for obtaining conviction "is no more foolproof than full trials to the court or to the jury. Accordingly, [courts] take great precautions against unsound results, and we should continue to do so, whether conviction is by plea or by trial." *Brady v. United States, supra*, 397 U.S. at 758, 90 S.Ct. at 1474.

It must be assumed that, during the course of plea negotiations, the Assistant District Attorney knew that the dynamite had been destroyed and that it had been replaced by sawdust. Early in this case, law enforcement authorities knew that a substance, which the defendant believed to be dynamite but which was in fact merely sawdust, had been substituted in a tube that was eventually confiscated while in petitioner's possession. This is not the case

where one con-man or criminal has hoodwinked a cohort. In this instance law enforcement officers themselves have acknowledged that they were responsible for substituting an innocuous substance for a volatile material. Law enforcement officials were thus aware from the outset that it was impossible for the petitioner in this case to commit the crime proscribed by former § 265.05(7) of the New York Penal Law, the original crime charged, on December 1, 1970. The staff of the prosecution, including law enforcement and investigative personnel, must be seen as a unit for purposes of this case and it must be assumed that the Assistant District Attorney was aware of the surveillance and investigative efforts of the sheriff's office.

In addition, results of the laboratory test which were forwarded to the Assistant District Attorney on the day before the plea was entered into put the prosecutor on clear notice that the contested tube did not contain only dynamite, but that it contained wood shavings as well. At the very least, the Assistant District Attorney had a responsibility to bring these facts to the attention of the trial judge who accepted petitioner's plea. Such action would have put the trial court on actual notice as to the facts of this case and would have allowed the prosecutor to secure a ruling as to his duty to the defendant under the circumstances. The prosecutor's unilateral decision not to disclose this favorable and material evidence to the petitioner invited the risk of error. *Application of Kapatos*, 208 F.Supp. 883, 888 (S.D.N.Y.1962).

██ In order to maintain the integrity of the plea bargaining process and to assure that a guilty plea entered by a defendant is done so voluntarily, knowingly and intelligently, a prosecutor has a duty, during the course of plea bargaining, to disclose to the defendant evidence that is as clearly exculpatory of certain elements of the crime charged as is the contested evidence in this case. Such favorable and material evidence must be made available to defense counsel so that he in turn can provide his client with competent, informed advice as to the

course of action he should follow. *See McMann v. Richardson, supra,* 397 U.S. at 771, 90 S.Ct. 1441; *Tollett v. Henderson, supra,* 411 U.S. at 266–67, 93 S.Ct. 1602. Without such evidence before it, the trial court which accepted the plea could not, in fact, satisfy itself in any meaningful sense that petitioner's guilty plea was voluntarily and intelligently made by an informed defendant with adequate advice of counsel, and that there was nothing to question the accuracy and reliability of this defendant's admission that he had committed the crime with which he had been charged. *See Brady v. United States, supra,* 397 U.S. at 758, 90 S.Ct. 1463.

■ The final issue to be addressed is whether in fact the petitioner has been harmed by the prosecutor's failure to disclose the contested evidence, that is, whether substantial rights of the defendant have been impaired by the prosecutor's omission. If the constitutional error committed in this case can be classified as harmless beyond a reasonable doubt [*see Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)], then the writ should not issue.

In addition to being charged with a violation of former § 265.05(7) of the New York Penal Law on December 1, 1970, at a time when I have found that the device could not be classified as an "explosive device," petitioner was also charged with an identical violation that allegedly occurred on November 29, 1970, which was a time when, based on the evidence before me, the tube did contain dynamite and was in fact an explosive device which would satisfy the requirements of former Penal Law § 265.05(7). By relying on the *Bufalino* trial testimony of Sergeant Stevenson that dynamite was removed from the contested tube on November 29, 1970, petitioner, at least by implication, acknowledges that dynamite was in fact in the contested tube on November 29, 1970 and before that date. At this proceeding, petitioner has failed to offer any proof that the first count of the indictment was a baseless charge or to otherwise impugn the grand jury decision that there was probable cause for indicting the petitioner for this

violation. Whether there was sufficient evidence to convict the petitioner for this violation had the matter proceeded to trial is not a question before this court.

■ While it is clear that petitioner could not have been convicted for violating former Penal Law § 265.05(7) on December 1, 1970, the second count of the indictment, there has been no showing that petitioner might not have been convicted for violating former Penal Law § 265.05(7) on November 29, 1970, the first count of the indictment. In addition, it is well established that even where a defendant may not be convicted for the substantive offense because of factual impossibility, a defendant could still be convicted of *attempting* that substantive offense. *See* New York Penal Law § 110.10; *United States v. Heng Awkak Roman,* 356 F.Supp. 434 (S.D.N.Y.), *aff'd,* 484 F.2d 1271 (2d Cir. 1973), *cert. denied,* 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974); *California v. Rojas,* 55 Cal.2d 252, 10 Cal.Rptr. 465, 358 P.2d 921 (1961).

■ The decision to remove and destroy the dynamite was a wise one under the circumstances of this case. Such action avoided unnecessary risks and potentially dire consequences that might have ensued for both law enforcement officials and for the petitioner alike had the authorities left the tube undisturbed.

While the People would still have had to prove the element of intent in order to gain a conviction for attempt to violate former Penal Law § 265.05(7) (under Count II of the original indictment), there is nothing presently in the record that demonstrates that the People could not have proven such intent. Proof of attempt to commit the crime charged in the original indictment would constitute a C felony. The charge that petitioner eventually pleaded guilty to was a D felony, one degree of felony lower. Faced with the two B felony charges (one of which could only have been proven, at most, to be a C felony had the matter gone to trial), petitioner chose to forego his right to trial and to avoid the possibility of conviction of multiple charges with lengthy prison sentences, by pleading guilty to a

single D felony with an agreed-to maximum term of five years' incarceration. Conviction on B felony charges could have resulted in a maximum prison term not in excess of 25 years (assuming that the court imposed concurrent terms). A C felony conviction would have carried a maximum term of 15 years' incarceration.' Petitioner does not allege that he did not get what he bargained for and the record clearly supports the conclusion that he did realize his expectations. By pleading guilty, petitioner avoided the possibility of a more severe sentence at trial. *See United States ex rel. Burke v. Mancusi,* 453 F.2d 563, 565 (2d Cir. 1971), *cert. denied,* 406 U.S. 925, 92 S.Ct. 1795, 32 L.Ed.2d 126 (1972); *United States ex rel. Holes v. Mancusi,* 423 F.2d 1137, 1142 (2d Cir. 1970); *United States ex rel. Amuso v. LaVallee,* 291 F.Supp. 383, 385 (E.D.N.Y. 1968), *aff'd,* 427 F.2d 328 (2d Cir. 1970). Petitioner also gained the advantage of having multiple charges effaced in favor of his plea to a lesser degree of felony. *See Martin v. Coiner,* 299 F.Supp. 553, 556 (S.D. W.Va.1969).

The record before me indicates that there was thus sufficient mutuality of advantage to support this bargain as being reasonable and fair, after the fact, even though the Assistant District Attorney's failure to disclose potentially exculpatory evidence was an omission of constitutional proportions and is subject to censure as a bargaining tactic. In retrospect, petitioner's decision to plead guilty to a D felony, with assurances that a maximum term of five years' imprisonment would be imposed, was still a voluntary and intelligent, if not properly informed, choice among the alternative courses of action open to him at the time the plea was entered. *See North Carolina v. Alford, supra,* 400 U.S. at 31, 91 S.Ct. 160.

The application for a writ of habeas corpus is therefore denied in all respects.

Certificate of probable cause is also denied.

So ordered.