762 P.2d 602

**STATE of Arizona, Respondent,**

v.

**Martin Hale DRAPER, Petitioner.**

**No. 1 CA–CR 11423–PR.**

Court of Appeals of Arizona, Division 1, Department C.

June 14, 1988.

Review Granted Nov. 3, 1988.

Thomas E. Collins, Maricopa County Atty. by H. Allen Gerhardt, Deputy County Atty., Phoenix, for respondent.

John C. Williams, Prescott, for petitioner.

## OPINION

### KLEINSCHMIDT, Judge.

The defendant pled guilty to attempted child molestation. We set aside the plea because we hold that the right to due process of law, the right to effective assistance of counsel, and public policy generally, forbid the prosecution from requiring, as a condition of a plea agreement, that a defendant forego his right to interview witnesses before deciding whether to accept a plea agreement. We also hold that it was improper for the prosecutor and defense counsel to withhold knowledge of this condition of the plea agreement from the court at the time the plea was entered.

The issue arose in the following manner. A nine-year-old girl was recuperating from surgery at St. Joseph's Hospital in Phoenix. Her mother testified at the preliminary hearing that she was sleeping in her daughter's hospital room and was awakened during the early morning hours when she heard her daughter say "ouch." She saw the defendant get off her daughter's bed. When she confronted him he tried to leave the room so she restrained him. The daughter told her mother that the defendant had awakened her, felt her chest, squeezed her thigh and put his hand into her pants and touched her vaginal area. The police were called, and the defendant was arrested.

The defendant said that he had gone to St. Joseph's because he thought he was going to experience alcohol withdrawal seizures, which he had experienced before. He was told to go to the Indian Hospital, but fell asleep in the waiting room. According to him, he did experience a seizure and remembered nothing until he was confronted by the hospital security guards. He assumed that he wandered into the girl's room looking for a place to lie down without knowing what he was doing.

The defendant was originally charged with child molesting, a Class 2 dangerous crime against children. The maximum penalty for this is 22 years' imprisonment, all of which must be served. Probation is not available. He entered into an agreement to plead guilty to attempted child molesting, a Class 3 felony, a dangerous crime against children in the second degree. Probation is available for this offense, and the maximum penalty is 15 years' imprisonment. The defendant was actually sentenced to 15 years.

When the defendant originally tried to plead guilty pursuant to a plea agreement, his attorney told the judge that he had been told by the prosecutor that if he attempted to interview witnesses the offer would be withdrawn. The prosecutor denied this, and when defense counsel further attempted to put this unwritten condition of the plea agreement on the record, the prosecutor threatened to withdraw from the plea. After further discussion, the trial judge continued the matter.

A week later, the defendant entered a guilty plea before a different trial judge. Among the rights explained to the defendant that he was giving up were his rights to confront and cross-examine witnesses and to compel the attendance of witnesses at trial. At this hearing, the judge did not ask the defendant if there were any other promises or conditions to the plea agreement, and no mention was made of any unwritten agreement that the plea would be withdrawn if the defendant or his counsel interviewed any witnesses.

In his petition for post-conviction relief, the defendant alleged that the state offered him a plea bargain on the condition that the defense not interview the victim in this matter and that this violated his right to confront the witnesses against him as guaranteed by the Sixth Amendment to the Constitution of the United States. He also alleged that the deputy county attorney insisted that no written record be made of this term of the plea agreement. These allegations were supported by an affidavit from the attorney who had represented the defendant at trial, and they were not refut-

ed by the state. The trial judge dismissed the petition.

In his motion for rehearing, the defendant noted that the trial court had not honored his request to appoint an expert to interview the victim. In denying the motion for rehearing, the trial judge astutely noted that the real issue to be decided was whether the defendant's plea was invalid, thus keeping the issue alive for review. The trial judge found no basis for relief and denied the motion for rehearing.

## A PLEA AGREEMENT CANNOT BE CONDITIONED ON A WAIVER OF THE RIGHT TO ATTEMPT TO INTERVIEW WITNESSES

■ While the state and a defendant may generally negotiate on any aspect of a case, the court must review every plea agreement to ensure that it serves the ends of justice. *State v. Solano*, 150 Ariz. 398, 724 P.2d 17 (1986). Some conditions and inducements are impermissible as a matter of public policy or constitutional law. *See State v. Ethington*, 121 Ariz. 572, 592 P.2d 768 (1979) (right to appeal is not negotiable); *State v. Horning*, No. 1 CA–CR 10839 (filed March 17, 1988) (conjugal visits are not a proper inducement for a guilty plea); *United States v. DeMarco*, 401 F.Supp. 505 (C.D.Calif.1975) *aff'd* 550 F.2d 1224 (9th Cir.1977) (right to change of venue is not negotiable); *People v. White*, 32 N.Y.2d 393, 345 N.Y.S.2d 513, 298 N.E.2d 659 (1973) (plea conditioned on withdrawal of motion to dismiss for lack of speedy trial is impermissible).

■ Neither the defendant nor the state has cited any authority that discusses the condition the state imposed in this case, and we have not found a case that directly discusses this issue. Our decision is based on our belief that to forbid a defendant the right to attempt to interview witnesses undermines the adversary system and threatens the foundation of our system of justice. Such a condition violates the right to due process of law as guaranteed by the Fifth Amendment to the Constitution of the United States and article 2 § 4 of the Arizona Constitution, and the right to the effective

assistance of counsel as guaranteed by the Sixth Amendment to the Constitution of the United States and article 2 § 24 of the Arizona Constitution. Even if the condition were not violative of these constitutional rights, it nonetheless is against public policy because it corrupts the truth finding process.

## DUE PROCESS OF LAW

It is a constitutional requirement that any plea of guilty must be entered with sufficient awareness of the circumstances relevant to the case so that it can be said to be a voluntary and intelligent act. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed. 2d 785 (1970). To enter an intelligent plea the defendant must assess "the numerous factors which bear upon his choice of whether to formally admit his guilt or to put the state to its proof." *United States ex rel. Healey v. Cannon*, 553 F.2d 1052, 1056 (7th Cir.1977) *cert. denied Mitchell v. Healey*, 434 U.S. 874, 98 S.Ct. 221, 54 L.Ed. 2d 153 (1977). This requirement stems from the constitutional right to due process of law. *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *Smith v. O'Grady*, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859 (1941). *See also State v. Cordova*, 105 Ariz. 597, 469 P.2d 82 (1970); *Ex Parte Lewis*, 587 S.W.2d 697 (Tex.App.1979) (the right to due process of law applies to the entry of a guilty plea just as much as it does to a trial). While the requirement that a guilty plea be voluntary and intelligent does not set up a particularly stringent test, it does require that the defendant possess an understanding of the law in relation to the facts. *McCarthy*, 394 U.S. at 466, 89 S.Ct. at 1171, 22 L.Ed.2d at 425.

The defendant's ability to assess the facts of the case bear on the intelligence of the plea. The state's duty to disclose exculpatory information to the defendant at some point in time has long been recognized. *Brady v. Maryland*, 373 U.S. 83, 83

S.Ct. 1194, 10 L.Ed.2d 215 (1963). It has been held that the government must provide exculpatory evidence to the defendant before he pleads guilty. *Fambo v. Smith*, 433 F.Supp. 590 (W.D.N.Y.1977). *See also* Ostrow, *The Case for Preplea Disclosure*, 90 Yale L.J. 1581 (1981); *Brady v. Maryland and the Prosecutor's Duty to Disclose*, 40 Univ. of Chicago L.R. 112 (1972/1973). While presumably we do not deal with undisclosed exculpatory evidence here, there is a strong similarity between the prosecution's failure to disclose exculpatory evidence and the prosecution's foreclosure of the defendant's right to attempt to discover exculpatory evidence himself.

■ Outside the context of what conditions may be imposed by plea agreement, the cases solidly support the proposition that a defendant has a right to attempt to interview witnesses. While a witness does not have to talk to defense counsel, it is improper for the state to interfere with the right of the defense to attempt to talk to witnesses. In *State v. Moncayo*, 115 Ariz. 274, 564 P.2d 1241 (1977), our supreme court observed:

> A defendant and his counsel certainly have a right to talk with any witness having knowledge of matters which may be beneficial or detrimental to the defense.

*Id.* at 277, 564 P.2d at 1244. In *United States v. Castillo*, 615 F.2d 878 (9th Cir. 1980), a case dealing with the deportation of witnesses before the defendant had an opportunity to interview them, the court, in explaining the earlier case of *United States v. Mendez–Rodriquez*, 450 F.2d 1 (9th Cir.1971), said:

> The gist of a *Mendez–Rodriquez* violation lies in the interferance with the opportunity to formulate a defense. Conduct by the government which prevents a defendant from interviewing potential witnesses and making an independent judgment on which witnesses should be called deprives a defendant of the fundamental right to plan and present a defense to criminal charges. *See United States v. Tsutagawa*, 500 F.2d 420, 423 (9th Cir.1974).

*See also United States v. Cook*, 608 F.2d 1175 (9th Cir.1979) *cert. denied* 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980); *State v. Wise*, 101 Ariz. 315, 419 P.2d 342 (1966); *Mota v. Buchanan*, 26 Ariz.App. 246, 547 P.2d 517 (1976); and *State v. Chaney*, 5 Ariz.App. 530, 428 P.2d 1004 (1967).

## EFFECTIVE ASSISTANCE OF COUNSEL

Another overlapping right, the right to effective assistance of counsel, forbids the condition that the state imposed on this plea agreement. When a defendant enters a guilty plea on counsel's advice, the voluntariness of the plea depends upon whether his attorney's performance was within the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). While we do not suggest that a guilty plea cannot be entered unless and until defense counsel interviews the witnesses in the case, a failure to conduct such interviews will frequently constitute ineffective assistance of counsel. As we said in a different context in *State v. Radjenovich*, 138 Ariz. 270, 674 P.2d 333 (App. 1983):

> We have no hesitancy in holding that, except in the most unusual circumstances, it offends basic notions of minimal competence of representation for defense counsel to fail to interview any state witness prior to a major felony trial.

Defense counsel's role as an investigator is not confined to those cases which actually go to trial. Forty years ago, the Supreme Court of the United States observed:

> Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then offer his informed opinion as to what plea should be entered.

*Von Moltke v. Gillies*, 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309, 319 (1948). Common sense and experience suggest that an effective independent examination of the facts will frequently require defense counsel to interview witnesses. A good discussion of just what is expected of de-

fense counsel before advising his client to plead guilty is found in *Investigation of Facts in Preparation for Plea Bargaining*, 1981 Ariz.St.L.J. 557. *See also* Lawless, *Prosecutorial Misconduct* § 6.02 (1985); *ABA, Standards for Criminal Justice (2d ed.)* Standard 4–6.1 (1986).

We cite these authorities as evidence of the importance of pre-plea investigation to the question of whether a defendant has been afforded effective assistance of counsel. It is not necessary to our decision to decide what is, and what is not, effective assistance of counsel in a particular case. Clearly, however, to permit the prosecutor to preclude the defense from interviewing witnesses before the defendant decides whether to enter a plea of guilty would, in many cases, guarantee that counsel was ineffective. Even if such a condition were not so egregious as to run afoul of the state and federal constitutions, we would, because this practice holds so strong a potential for subverting the truth-finding process, condemn it as contrary to public policy. *See Ethington*, 121 Ariz. 572, 592 P.2d 768. The protection of these rights is critical, particularly in a system where mandatory sentencing bestows a strong advantage on the state in the plea bargaining process.

The state, based on *State v. McInelly*, 146 Ariz. 161, 704 P.2d 291 (App.1985), argues that there is no constitutional right to a plea agreement and that it, the state, may impose any condition on the bargain that it wants. The problem with *McInelly* is that its description of the factor the plea was conditioned on—"certain conduct by appellant's codefendants"—is too cryptic to inform us as to whether serious considerations of public policy or constitutional law were implicated in that case. Our supreme court, contrary to the sweeping pronouncement of *McInelly*, has noted that the rights of a defendant must be taken into account in assessing whether a plea bargain will be upheld. *State v. Williamson*, 104 Ariz. 9, 448 P.2d 65 (1968). Finally, of course, *McInelly*, which was decided by Division Two of the Court of Appeals, fails to reckon with our supreme court's holding in *Ethington*, which struck down a condition in the plea that the conviction could not be appealed.

## NONDISCLOSURE OF AGREEMENT

◼ The condition of the plea agreement that the defendant forego his right to attempt to interview the victim was not included in the written plea agreement and was, by prior agreement between the defense and the prosecution, deliberately concealed from the trial judge who ultimately entered the plea of guilty. The record shows what transpired.

On August 11, 1986, when the defendant originally attempted to change his plea, the following exchange took place:

THE COURT: All right, Mr. Draper, tell me—if this an [sic] Alford plea, would counsel supply the factual basis for the plea?

[DEFENSE COUNSEL]: Judge, Mr. DeMars has asked me to provide the factual basis.

[PROSECUTOR]: I can provide it.

[DEFENSE COUNSEL]: Well, in this matter I'd also like to establish, my client —I've not been able to interview witnesses because I was told if I interview witnesses the offer is going to be withdrawn, so—

[PROSECUTOR]: That's improper. That's not correct.

[DEFENSE COUNSEL]: It's my understanding, in talking with Mr. DeMars on the phone, that if I conducted interviews the offer would be withdrawn.

[PROSECUTOR]: That was not correct. I told him he had a right to interview the witnesses in this matter. The plea agreement was open until this date, I have interviews set up for next week in this matter. The plea agreement is open until this date. We have a firm trial date in two weeks.

THE COURT: Mr. Noland, if you feel that you have somehow been coerced into telling your client to plead guilty, then I suggest we stop the entire proceedings now and—

[DEFENSE COUNSEL]: In this matter, I do not—my client has told me that

he does not remember things the DRs have indicated, but he does not want to take a chance of going to trial. He doesn't know what happened, but he does not want to take a chance on trial. He'd like to take the plea. I want to clarify for the record, I have not interviewed the witnesses. I've been told—

THE COURT: All right, Mr. Noland, that really has nothing to do with the plea agreement that we're dealing with today. If you've been—if you feel that somehow you have not assessed all the facts in this case, then I suggest that you reconsider.

[DEFENSE COUNSEL]: Well, my client wants to proceed now in this matter here. I am simply going to—my client—I just want to clarify for the record, you're telling me it's improper, I apologize to the court, I thought it was proper at this time.

I have nothing further, if Bill DeMars will provide the factual basis.

THE COURT: Mr. Draper, do you have something to say at this point?

THE DEFENDANT: Yes, my understanding, he couldn't interview the witnesses and that's why I more or less went around with the Alford plea. It might have been—if he had interviewed the witnesses, I might have decided to take the trial, go to trial with it.

The hearing then proceeded on to other matters but was subsequently continued after a dispute arose concerning the factual basis for the plea.

The second change of plea hearing was held before a different judge on August 18, 1986. The judge never specifically asked the defendant whether all the conditions of the plea were contained in the plea agreement, and neither the defendant nor his counsel nor the prosecutor brought this to the judge's attention. As it later emerged during the post-conviction relief proceedings, both attorneys had agreed not to advise the judge of the condition. An affidavit of defense counsel attached to the petition read as follows:

PHILLIP G. NOLAND, being first duly sworn upon his oath, deposes and says:

I am a Deputy Public Defender at the Maricopa County Public Defender's Office.

In the week of July 28, 1986, Deputy County Attorney, William DeMars, told me over the phone that on the Martin Draper case the offer of plea to Attempted Child Molest, no agreements to sentencing, would not be open if I interviewed the witnesses.

I tried to clarify his position in this matter by asking if he was saying that if I interviewed witnesses that there would be no offer. He said he was not saying that if I interviewed witnesses there would be no offer, but then he again said that if interviewed [sic] the witnesses there would be no offer.

When I again asked him what he was saying, he said no interviews or the offer is off, that he would take it to trial. He also told me that he was tired of playing games with the Public Defender's Office, that this was a generous offer, and he did not want to discuss it anymore. He said the offer will be open till August 7, 1986.

On August 4, 1986, I talked with Mr. DeMars on the phone. I asked for him to provide me with the offer in writing, and that a speed letter would suffice.

Mr. DeMars told me he would not give me the offer in writing. He refused this request many times. He would not give a reason for his refusal.

He told me that he was tired of playing games with the Public Defender's Office.

Per a phone conversation later that day, Mr. DeMars agreed to offer the plea as an Alford Plea. He said that I would have to provide the factual basis.

The defendant attempted to enter a plea of guilt by Alford to Attempted Child Molest. The Court was informed by myself that the plea was based solely on the police report and that I was informed that if there were interviews, the offer was off.

Mr. DeMars then withdrew from the plea agreement. After a discussion between myself and Mr. DeMars, Mr. DeMars agreed to offer the same plea if I did not mention anything about interviews or conditions to the Court at the next time set for change of plea.

The state does not attempt to refute these assertions and, by the posture of its argument on appeal, tacitly admits them.

The failure to disclose a term of the plea agreement violated the Arizona Rules of Criminal Procedure. Both counsel acted improperly in agreeing not to advise the court that the state had conditioned the plea on the defendant's agreement to forego interviewing the alleged victim. Rule 17.4(b), Arizona Rules of Criminal Procedure, provides that, "[t]he terms of a plea agreement shall be reduced to writing and signed by the defendant, his counsel, if any, and the prosecutor." The judge must know all terms of the agreement in order to:

> ... address the defendant personally and determine that he understands and agrees to [the agreement's] *terms*, that the written document contains *all the terms of the agreement*, and that the plea is entered in conformance with Rules 17.2 and 17.3.

Rule 17.4(c), Arizona Rules of Criminal Procedure (emphasis added).

The comment to Rules 17.4(b) and (c) notes that formalization of the agreement and oral confirmation insure that the parties, the sentencing court, any reviewing court, and the public are aware of the exact agreement. This awareness is necessary in order to determine the accuracy and fairness of the agreement, the voluntariness and intelligence of the plea, and whether the agreement is fully understood by the parties. *State v. Lee* 112 Ariz. 283, 541 P.2d 383 (1975); *United States v. Roberts*, 570 F.2d 999 (D.C.Cir.1977); *see Santobella v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). In *Lee*, the supreme court allowed the defendant to withdraw from a plea agreement because it had not been reduced to writing as required by Rule 17.

We are aware that not every failure to follow Rule 17 mandates a reversal. In *State v. Morris*, 115 Ariz. 127, 564 P.2d 78 (1977), the supreme court held that the failure to reduce the plea agreement to writing was harmless where there was no contention that the defendant did not understand all of the terms of the agreement. In *State v. Cornwall*, 114 Ariz. 550, 562 P.2d 723 (1977), the written plea agreement omitted any reference to the fact that the state agreed to recommend probation if the defendant testified against a number of other defendants. The trial judge was made aware of this provision of the agreement at the change of plea proceeding. Subsequently, the defendant sought to withdraw his plea of guilty on the grounds that the entire agreement had not been reduced to writing. The court rejected this argument and pointed out that it was incumbent on the defendant, as well as upon the prosecutor, to see that all the terms of the agreement were reduced to writing.

There are three reasons why *Morris* and *Cornwall* do not govern the case now before us: First, neither *Morris* nor *Cornwall* dealt with the condition of a plea which was constitutionally impermissible and contrary to public policy. Second, in both *Morris* and *Cornwall* the trial judge was completely apprised of all the conditions of the plea agreement and had a chance to evaluate whether the plea was voluntary and intelligent. Third, neither *Morris* nor *Cornwall* involved a *deliberate* agreement on the part of both sides to conceal a term of the agreement from the trial judge. The presence of this factor in the case gives us great concern. As noted in *Cornwall*, both counsel have an affirmative duty to advise the court at the change of plea hearing of any additional agreements not embodied in the written plea agreement. *See also State v. Mendiola*, 23 Ariz.App. 251, 253, 532 P.2d 193, 195, *aff'd* 112 Ariz. 165, 540 P.2d 131 (1975).

Based on the record before us, it is not absolutely clear that if the trial judge had made the express inquiry as to whether there were any other terms or conditions to the plea agreement counsel would have

misled him. That makes no difference. Where there is a duty to speak, silence is misleading. This is deceitful and wrong. Ethical Rule 3.3, Arizona Rules of Professional Conduct provides:

(a) A lawyer shall not knowingly (1) make a false statement of material fact or law to a tribunal; (2) except as required by applicable law, fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client.

In fairness to the prosecutor who handled this case at the trial stage, we observe that he has never been heard on this precise point. A different deputy county attorney handled the petition for post-conviction relief and the petition for review. It is conceivable that this second attorney may have made a tactical choice to rest his case solely on his view of the applicable law without bothering to attempt to refute defense counsel's version of what happened at the change of plea. For the purposes of this case, however, the state has conceded that events transpired as defense counsel's affidavit sets them forth. We condemn the conduct of both attorneys who appeared at the change of plea.

## NO HARMLESS ERROR

■ From all we can tell from this record, the state had a strong case against the defendant. We have considered whether what occurred here was harmless beyond a reasonable doubt so that it would not be necessary to set aside the plea. We do not believe it appropriate to resort to the doctrine of harmless error where the very error complained of is conduct which corrupted the truth finding process. There was only one witness in this case who can supply evidence of the crucial element of the crime. That witness is the victim. Notwithstanding the fact that defense counsel cross-examined the victim's mother at the preliminary hearing about what her daughter told her, who can say for certain what the child might reveal if defense counsel were allowed to question her? We are not omniscient and we will not fall back on the doctrine of harmless error, particularly when there appears to have been deliberate misconduct of counsel in concealing this condition of the plea from the trial judge. *See State v. Sorrel,* 132 Ariz. 328, 645 P.2d 1242 (1982).

The order of the trial court denying the petition for post-conviction relief is reversed. This case is remanded with directions to vacate the plea of guilty and sentencing and to allow the state, in its discretion, to proceed against the defendant anew.

SHELLEY, P.J., and GRANT, J., concur.