■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MATTHEW L. ARMER, Appellant.—Mikoll, J. Appeal, by permission, from an order of the Supreme Court at Special Term (Fischer, J.), entered April 6, 1983 in Otsego County, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment convicting him of the crime of murder in the second degree, after a hearing.

In June 1951, Corporal Arthur Diffendale of the State Police stopped a cattle truck bearing a cow in the City of Oneonta, Otsego County. As the officer left his police vehicle and walked toward the stopped truck, the driver opened the driver's side door, stepped out and shot the officer, causing his death. The assailant fled in the cattle truck which was later found abandoned. Ten days later, defendant was arrested. Thereafter, he was indicted and charged with two counts of murder in the first degree and four counts of felony murder.

In September 1951, defendant was convicted in Supreme Court upon a plea of guilty to murder in the second degree which was entered during trial. He was sentenced to 60 years to life imprisonment.* Sixteen witnesses testified for the prosecution prior to defendant's entry of his plea. None of them positively identified defendant as the murderer.

The procedural history of this case is complex. In 1976 defendant made a motion pursuant to CPL 440.10 for postconviction relief vacating the judgment of conviction. Due to reasons not relevant to the matter under consideration, hearings were not held until 1980, at which time defendant asserted his innocence and argued, *inter alia,* (1) that his plea was coerced by massive adverse publicity and by the prosecution's withholding of material exculpatory evidence, (2) that the guilty plea was not knowingly and intelligently made because the trial court failed to give defendant notice of the elements of the crime to which he pleaded and to inquire into the factual circumstances underlying the plea, and (3) that

---

* This sentence was subsequently reduced to 30 years to life.

there was a lack of jurisdiction in both the Grand Jury and the trial court to indict and convict defendant, respectively. Special Term denied defendant's application to vacate the judgment in a 66-page decision. This appeal, taken by permission of a Justice of this court, ensued.

Among the errors urged upon us by defendant is the contention that his plea was coerced when the prosecution purportedly failed to disclose the identity of a woman who had twice identified someone other than defendant in a police lineup as the perpetrator of the crime.

At the CPL 440.10 hearing, defendant's testimony indicated that a woman had twice identified a person to his left during the lineup and that, after that person was removed from the lineup, the woman was brought back, placed in front of defendant and said, "That is not the man." Defendant stated that he asked a person he thought was the District Attorney who the woman was and was only told, "You will find out later." Defendant's attorney, Harry O. Lee, also testified at the hearing. Lee indicated that defendant had told him of the misidentification and that he and his cocounsel attempted to learn the identity of the witness. Lee said he asked the special counsel to the District Attorney for the witness's identity and was told, "What do you expect me to do, give away my case?", or words to that effect. Apparently no formal demand or motion to the trial court was made for the identification information. Lee also stated that he asked for the names of anybody who failed to identify defendant. After trial, the District Attorney, according to newspaper accounts, stated, "Our only two eyewitnesses were a young boy and a woman who twice misidentified defendant before picking him."

Special Term refused to apply *Brady v Maryland* (373 US 83), finding that defendant had waived the application of recent law on the duty to disclose exculpatory evidence and was relying exclusively on the law as it existed in 1951. Special Term held that under that law, the prosecution had no obligation to disclose such evidence. Under *Brady,* the prosecution has a duty to disclose evidence that is exculpatory and material to the issue of guilt or punishment *(United States v Bagley,* 473 US —, —, 105 S Ct 3375, 3379; *Brady v Maryland, supra,* p 87). We determine that under the principles of retroactivity, the *Brady* rule should be applicable here *(see, Solem v Stumes,* 465 US 638; *see also, United States v Wilkins,* 326 F2d 135). Although Special Term refused to apply *Brady* and its progeny to the instant case because of the concession by defendant's counsel that only case law ·as of

1951 be applied, such concession on a purely legal issue is not controlling on this court.

Under *United States v Bagley (supra)*, in order to show that evidence is material it must be shown that had the exculpatory information been disclosed, there is a reasonable probability that the outcome would have been different. Thus, the question here is whether it is reasonably probable that defendant would not have pleaded guilty during the trial if he had received the information that the witness made the misidentification. In the instant case, where admittedly defendant knew of the misidentification and had informed his attorneys of it, although the name of the witness was unknown, the answer must be in the negative. Defendant knew of the misidentification and chose to plead guilty anyway. However, the answer to the question of whether there is reasonable probability that defendant would not have pleaded guilty had he been provided with the identity of all witnesses who misidentified him requires further analysis.

According to the testimony of defendant and his lawyer at the CPL 440.10 hearing, the reasons for pleading guilty during trial included a fear of the death penalty and adverse publicity, a belief that the trial court lacked jurisdiction and the whole proceeding could therefore be overturned, and the failure by defendant to find any favorable witnesses other than his mother. The prosecution's case was largely circumstantial. There was evidence that defendant was seen in the truck involved in the crime earlier on the day of the shooting and at other earlier times. His thumb print on the throttle of the truck was the only discernible fingerprint obtained from the truck. Pieces of metal apparently from the truck were found on his property and one piece matched a missing part of the truck. Defendant was also linked to the selling of stolen cattle and perhaps two witnesses would have testified that he was the assailant, although one may have identified the wrong person first. Additionally, although defendant was also linked to the cow, defendant at the hearing denied any knowledge of the cow or truck.

Moreover, defendant, knowing that he had at first been misidentified, made no formal or informal request of the prosecution for the identity of any or all witnesses who failed to identify defendant, made no motion to obtain a court order for such information and failed to go on with the trial. It is especially significant that defendant, rather than attempting to attack the weakness of the prosecution's case on identification and to discover the names of any such witnesses by cross-

examination, chose to enter a negotiated plea to a lesser crime. It appears from a review of the record that defendant's strong wish to avoid being subject to the death penalty so dominated his trial strategy that he did not, as a result, pursue this line of inquiry.

Inquiry was made at the hearing to discover what exculpatory evidence was in the prosecution's file. The District Attorney allowed defendant's counsel to review the State Police Bureau of Criminal Investigation file concerning the lineup and other information concerning possible misidentification. Special Term instructed the District Attorney to inspect the 32-year-old case file for exculpatory misidentification information. These efforts turned up no significant exculpatory material other than what was already known and there was no indication that such would be found in a further search of the District Attorney's files.

On review of the entire record, we conclude that defendant has failed to prove a reasonable probability that he would not have pleaded guilty had he been furnished the names of all witnesses who were unable to identify him at trial. Special Term's denial of a further in camera inspection of the District Attorney's file was not error. We find defendant's plea of guilty not to have been coerced or a result of the denial of his due process rights.

Defendant next claims that his right to a fair trial was impaired by massive pretrial publicity and that his plea of guilty was coerced as a result. We disagree. Defendant never made a motion for a change of venue nor did he exhaust all his peremptory challenges in selecting a jury for his trial. Although there was extensive pretrial and trial publicity, it has not been shown that an impartial jury was not selected and that the jury could not have rendered a fair verdict. Moreover, defendant has not shown by objective evidence that the publicity would have denied him a fair trial and that the denial was the exclusive reason for entering his guilty plea (see, People v Santana, 25 NY2d 827).

Defendant's argument that his conviction is null and void on the ground that the Grand Jury was not properly in session when he was indicted, and thus the Grand Jury and the trial court were without jurisdiction to indict and try him, is not persuasive. Defendant failed to prove that the adjournment of the Grand Jury divested it of authority. Moreover, we conclude that the trial court had jurisdiction to receive the indictment and try defendant despite the adjournment from

day to day in chambers *(see, Matter of Ryan v Supreme Ct. of State of N. Y.,* 9 AD2d 846, 847, *affd* 8 NY2d 739).

Finally, we find without merit defendant's contention that his plea must be vacated because the trial court failed to inquire into the factual basis for the plea or to give defendant notice of the essential elements of the crime to which he pleaded. There was no need to make a factual inquiry where, as here, there was a bargained-for guilty plea to a lesser or hypothetical crime *(see, People v Clairborne,* 29 NY2d 950; *People v Johnson,* 107 AD2d 947). As defendant was present at arraignment and at trial, it is clear that he was aware of the circumstances of the crime with which he was charged.

Special Term's rulings are supported by the record and should be accorded due deference. The rule of *Henderson v Morgan* (426 US 637) does not require a different result. In *Henderson,* there was a specific finding of defendant's lack of knowledge of the element of intent *(supra,* p 647). This is unlike the instant case.

Order affirmed. Main, J. P., Weiss, Mikoll, Yesawich, Jr., and Levine, JJ., concur.