[631 NYS2d 322]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN R. VASQUEZ, Appellant.

First Department, September 19, 1995

**APPEARANCES OF COUNSEL**

*Daniel R. Williams* for appellant.

*Pamela Tishman* of counsel *(Norman Barclay* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, New York City, attorney), for respondent.

**OPINION OF THE COURT**

Ross, J.

■ ■ On this appeal we are presented with, *inter alia,* two novel issues. The first, apparently an issue of first impression in our courts, involves the question of whether a corrupt police officer's knowledge of his own illegal conduct, which was collateral to and uninvolved with this defendant's prosecution, can be imputed to the prosecution for the purposes of *Brady v Maryland* (373 US 83). The second concerns whether the present sense impression exception to the hearsay rule, which has been recently adopted in this State *(People v Brown,* 80 NY2d 729), applies to allow the admission of a hearsay declaration, where the hearsay declaration itself does not explicitly recite that it was based on a contemporaneous or near contemporaneous observation, but where such facts can be inferred from the circumstances. With regard to the first issue we conclude that, under the circumstances of this case, where, *inter alia,* the corrupt officer's illegal conduct was in no way related to defendant's prosecution and the People had no knowledge of the corrupt officer's so-called "bad acts" until after the trial, the officer's knowledge of his own prior illegal conduct should not be imputed to the People. Moreover, we find that the information regarding the officer's prior illegal conduct, even if disclosed would not have had a "reasonable probability" of changing the result. At most the information would have functioned only as impeachment evidence in a case where the testimony of this officer was duplicated by, and less essential than, the testimony of the other arresting officer who also testified at the trial. With regard to the second issue, we find no requirement in *People v Brown (supra)* that a declaration submitted as a present sense impression itself recite that it is based upon a contemporane-

ous or near contemporaneous observation. Furthermore, there is ample evidence in this case to corroborate that the statement was both spontaneous and contemporaneous with the event described. Based upon the above findings and those made, *infra,* regarding the other issues raised on appeal by the defendant, we affirm the defendant's conviction and the denial of his posttrial motions to vacate same.

The defendant was arrested on the afternoon of June 20, 1992 and thereafter indicted and charged with one count of criminal possession of a weapon in the second degree (Penal Law § 265.03) and two counts of criminal possession of a weapon in the third degree (Penal Law § 265.02 [1], [4]). The circumstances of defendant's arrest were as follows:

On the date in question, Police Officers Michael Kennedy and Matthew Barrett, while driving south on Broadway, observed a large crowd of people at the southwest corner of Broadway and 143rd Street. When the officers stopped their car and approached the crowd, it dispersed. Both officers observed defendant walking quickly toward the building located at 3495 Broadway. Officer Kennedy testified at trial that as the defendant walked toward the entrance of the building, his right hand was under the front portion of his shirt in a manner which indicated to Kennedy that defendant was either holding or placing what the officer thought was a gun, into his waistband. Officer Barrett testified that he saw defendant looking back at them while clutching something in his waistband. Both officers stated that they watched the defendant for 5 or 10 seconds as he approached the building's entrance. At approximately the same time, a woman, who was described as a heavy-set Hispanic woman with gray hair, walked up to Police Officer Kennedy, pointed to the defendant and stated, "officer, he's got the gun". Thereupon Kennedy yelled to Barrett and pointed to the defendant who then began to run into the building with his hand still at his waistband.

With Officer Barrett leading, the officers followed the defendant into the building and up a staircase to the second floor. Officer Barrett testified that he drew his weapon as he ran up the staircase and then, upon reaching the second floor, saw that defendant initially had keys in one hand about to open the door. The officer then saw defendant reach down and grab the butt of a semiautomatic handgun, which he pulled slightly out of his waistband and then let go as he entered the apartment. The officers, who were about 15 feet away when the defendant entered the apartment, reached the door as it

was closing. They were about to touch the door, which was left ajar, when they heard a gunshot from inside the apartment. The officers immediately radioed for backup. A few moments later the defendant came out of the apartment and was arrested. The officers entered the apartment and immediately saw and smelled smoke from the discharge of a weapon and observed that there was a hole in the hallway wall near the door, through which they had just entered the apartment. The hole appeared to the officers to be the size typically made by a .38 caliber or 9mm bullet.

No weapon was found in the apartment, however, large holes were discovered in the walls of the apartment which led to spaces between the walls leading down to the basement. While the investigating officers attempted to see down into these holes, the walls of the apartment were left intact. Police Officer Kennedy found five rounds of live .380 caliber ammunition on the bedroom floor. These rounds were found to be made for a semiautomatic pistol. The defense presented only the testimony of an investigator, who stated that the lighting conditions on the second floor of 3495 Broadway were poor at 11:10 A.M. on the date he visited the location. While the investigator did not recall the specific weather conditions on the date of his visit, he stated that the hallway lights were dim. Defendant was acquitted of the top count of the indictment charging him with criminal possession of a weapon with intent to use same unlawfully against another (second degree possession), but was convicted of the two third degree weapon possession counts.

The judgment of conviction was rendered against defendant on April 13, 1993. Thereafter, on or about March 22, 1994 defendant filed a motion to vacate the judgment of conviction pursuant to CPL 440.10 based, *inter alia,* upon the claim that information concerning the corrupt activities of Officer Michael Kennedy was known to the People, was newly discovered evidence, and constituted exculpatory evidence which should have been disclosed to the defense pursuant to *Brady v Maryland (supra).* That motion was denied on or about June 29, 1994 and a Justice of this Court granted leave to appeal and consolidation with the defendant's direct appeal from the judgment. The issue presented by the appeal from the denial of defendant's March 22, 1994 CPL 440.10 motion is apparently one of first impression in our Court.

Police Officer Michael Kennedy was one of the officers arrested in a "sting" operation involving corrupt officers in

the Thirtieth Precinct in August of 1993, some four months after defendant was sentenced. The record in this matter does not contain any information as to the exact nature of the charges filed against Officer Kennedy or the disposition of those charges. Defendant's motion in the trial court relied entirely on news media accounts of the Mollen Commission investigation into the Thirtieth Precinct which mentioned Officer Kennedy's arrest. Based upon the media reports, the defense contended that Police Officer Kennedy and others at the Thirtieth Precinct conducted illegal searches, and committed thefts and acts of routine brutality against suspects, and that this valuable impeachment evidence was improperly withheld by the People.

The prosecution responded to the defendant's motion and maintained that at the time of defendant's trial, which commenced on March 3, 1993, it had been investigating a civilian complaint alleging misconduct against both officers, Kennedy and Barrett. The Internal Affairs Division of the Police Department had informed the District Attorney's Office of the complaint in February of 1993. On March 23, 1993, after investigating the matter, the Internal Affairs Division ruled the complaint unsubstantiated. The prosecution averred that this was the only complaint against Officer Kennedy that it was aware of prior to Kennedy's arrest in August 1993. However, the People did not deny the fact that Police Officer Kennedy may have been involved in corrupt activity known only to himself. In reply papers on the CPL 440.10 motion, the defense argued that as part of the prosecution team, Kennedy's knowledge of his own misconduct should be imputed to the People, regardless of whether any prosecutor could have known about Kennedy's secret corrupt activity.

We note initially that the defense advanced no suppression claim regarding any exculpatory evidence relating directly to the defendant's guilt or innocence of the charges in this matter. The defendant's claim is limited to Police Officer Kennedy's collateral "bad acts" and their potential use to impeach his credibility. Furthermore, defendant alleged no facts to prove that any member of the prosecution team, other than Kennedy himself, had knowledge of Kennedy's corrupt activities prior to the trial. The evidence relied upon by the defendant to support his allegations consisted entirely of media reports of the ongoing investigation into the Thirtieth Precinct. In response to the motion, the People provided uncontroverted affirmations that their knowledge of Kenne-

dy's activities prior to August 1993 was limited to the single unsubstantiated complaint. Therefore, there was no factual basis to warrant a hearing on defendant's claim that the prosecution in fact had pretrial knowledge of Kennedy's corrupt activity. To raise a triable issue some "actual evidence" of that knowledge on the part of the prosecution must have been submitted to the court (CPL 440.30 [4]; *People v Brown,* 56 NY2d 242, 246-247). If the analysis were to cease here, defendant's *Brady* claim would fail in the absence of evidence that the exculpatory material was in the People's possession *(see, People v Vilardi,* 76 NY2d 67, 73; *People v Forbes,* 190 AD2d 1005, 1006, *lv denied* 81 NY2d 970).

We now turn to defendant's argument that Officer Kennedy's secret knowledge of his own corrupt activity must be imputed to the prosecutor for *Brady* purposes, solely by virtue of the fact that he is considered an arm of the prosecution, notwithstanding the fact that it was not possible for any other member of the prosecution to know of the officer's prior corrupt activity.

It is a well-settled principle in this State, that the People's duty to disclose exculpatory material in their control "arises out of considerations of elemental fairness to the defendant and as a matter of professional responsibility" *(People v Simmons,* 36 NY2d 126, 131). The majority in *Brady v Maryland (supra,* at 87) stated that the focus "is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused". Thus it was recognized in *Simmons (supra,* at 132) that "the office of the District Attorney is an entity and the individual knowledge of a case possessed by assistants assigned to its various stages must, in the final analysis, be ascribed to the prosecutorial authority [citation omitted]". The concept of the prosecution as an entity has been extended to include the law enforcement personnel who participate with the attorneys for the State in the prosecution. Thus, in *Barbee v Warden* (331 F2d 842, 846 [4th Cir]) it was stated:

"The police are also part of the prosecution, and the taint on the trial is no less if they, rather than the State's Attorney, were guilty of the nondisclosure. * * *

"The duty to disclose is that of the state, which ordinarily acts through the prosecuting attorney; but if he too is the victim of police suppression of the material information, the state's failure is not on that account excused."

The law in this State is no different *(see, People v Russo*, 109 AD2d 855, 856; *People v Clausell*, 182 AD2d 132, *lv denied* 81 NY2d 761).

However, *Barbee v Warden (supra)* and the other cases relied upon by the defendant uniformly involve the nondisclosure of material which has some bearing on the case against the defendant. *Freeman v State of Georgia* (599 F2d 65 [5th Cir], *cert denied* 444 US 1013), relied upon by the defendant, involved the concealment of the identity of an exculpatory witness by an investigating officer in order to conceal his romantic involvement with her. It was stated in that case that when an investigating officer willfully and intentionally conceals material information, regardless of his motivation and the otherwise proper conduct of the State's attorney, the police officer's conduct must be imputed to the State as part of the prosecution team *(supra,* at 69). While it is certainly true that in the case at bar Officer Kennedy's motivation was personal, as was that of the officer in *Freeman,* it is without question that the nature of the information concealed by Kennedy had no relationship to the case against the defendant, except insofar as it would be used for impeachment purposes.

The Second Circuit in *United States v Rosner* (516 F2d 269, *cert denied* 427 US 911), which involved the testimony of Detective Robert Leuci who was the subject of the film Prince of the City, presents an analogous set of circumstances to the present case. Therein, Leuci testified as to some of his own prior criminal conduct but lied as to its full extent. No one but Leuci himself knew the full extent of his criminal activities until it was revealed after defendant Rosner's trial was concluded. Rosner set out virtually the same argument, that Leuci's perjury with respect to his prior collateral criminal activity should be attributed to the prosecution, as advanced by the defendant in this case. The Second Circuit rejected that argument and drew a distinction between the circumstance in which an officer conceals evidence which directly relates to a defendant's guilt or innocence, and the situation in which the officer conceals his own purely collateral misconduct in unrelated cases. The court held in *Rosner,* that in view of, *inter alia,* the facts that the prosecution could not have known about the collateral misconduct concealed by Leuci and that the perjury involved Leuci's own misconduct in situations unrelated to the case against Rosner, Leuci's perjury should not be attributed to the prosecution.

Other courts, which have addressed the issue regarding the concealment by a corrupt officer of his own misconduct, are in agreement that the corrupt officer is not acting as an "arm of the prosecution" when he or she is concealing his or her own criminal activity, unrelated to the case against a particular defendant. For example, in *Commonwealth v Waters* (410 Mass 224, 229, 571 NE2d 399, 402), the court held that, while it had stated many times that the actions of police officers, who are members of the prosecution team, are generally attributable to the prosecution, it had never held or suggested that "actions taken by * * * officers, not in furtherance of law enforcement but rather in pursuit of an unlawful scheme of their own * * * are attributable to the prosecution". In *Donahoo v State* (552 So 2d 887, 895-896 [Ala Crim App]), a Deputy Sheriff, who testified against the defendant, concealed the fact that he had a felony conviction when he applied to the Sheriff's Department. The fact of the officer's prior conviction came out after defendant Donahoo's trial and Donahoo argued that in failing to produce that information the State withheld exculpatory evidence. The court held that the information, which had failed to show up on routine computer checks of the Deputy Sheriff, was unknown by the prosecution at the time of the trial and was not "the kind of information which may be imputed to a prosecutor" (552 So 2d, *supra,* at 896; *accord, Ellis v State,* 641 So 2d 333 [Ala Crim App]). Finally, we note that in *People v Irvin* (180 AD2d 753, 754, *lv denied* 79 NY2d 1002), a Second Department case which addresses a similar issue, it was held that, where a police serologist perjured himself with regard to his credentials, the falsehood could not be attributable to the People. Therefore, we decline to attribute the concealment of prior collateral criminal conduct by Officer Kennedy to the People in this case.

Moreover, we find that even if it is assumed that the failure to disclose the prior criminal conduct could be attributable to the People and would therefore constitute a *Brady* violation, that violation would be harmless in the circumstances of this case. The general standard to measure the materiality of the failure to disclose *Brady* material, where there was no specific defense request for information in question, is whether there was a " 'reasonable probability' " that, had the evidence been disclosed to the defense, the result of the prosecution would have been different *(People v Chin,* 67 NY2d 22, 33; *People v Ramos,* 201 AD2d 78, 89). This is to be contrasted with the " 'reasonable possibility' " standard employed when there is a

failure to disclose material specifically requested by the defense *(People v Vilardi, supra,* at 77). Here, there was no specific request for the information in question and it is clear that, if the information was known to the defense and used to impeach Officer Kennedy, it would not have been probable that a different result would have occurred. Officer Kennedy's testimony was duplicated by that of Officer Barrett. Moreover, Officer Barrett's testimony was more important than that of Officer Kennedy, as it was Barrett who testified that he actually saw the defendant grab the butt of the pistol.

Lastly, with respect to this issue, we note that on a motion for a new trial pursuant to CPL 440.10 (1) (g) based upon newly discovered evidence, it must be shown that the new evidence creates a reasonable probability of a more favorable verdict. It has repeatedly been held that generally, evidence which would merely impeach testimony at trial would not be sufficient *(People v Salemi,* 309 NY 208, 215-216, *cert denied* 350 US 950; *People v Balan,* 107 AD2d 811; *People v Powell,* 96 AD2d 610). Moreover, we note again that Kennedy's testimony was duplicated by that of Officer Barrett. Thus, fundamental fairness would not require a new trial in this case based upon the impeachment evidence in any event.

■ We now turn to defendant's argument that the out-of-court statement, "he's got the gun", attributed to an unidentified elderly woman, and made to Officer Kennedy, should not have been admitted into evidence as a present sense impression pursuant to *People v Brown* (80 NY2d 729, *supra),* because the statement itself does not recite that it is based on a contemporaneous or nearly contemporaneous observation, such as the statement "I see a gun". We are informed that there have been no cases since *People v Brown* exactly on point. In fact our research confirms that, like *Brown* itself, the cases decided since have, by and large, dealt with the admissibility of recordings of 911 calls to police under the present sense impression exception *(see, e.g., People v Buie,* 201 AD2d 156, *lv granted* 84 NY2d 933; *People v Orth,* 201 AD2d 510, *lv denied* 83 NY2d 913), and that there has been no case dealing with the precise issue raised herein.

In *People v Brown,* the Court held that "spontaneous descriptions of events made substantially contemporaneously with the observations are admissible if the descriptions are sufficiently corroborated by other evidence" (80 NY2d, *supra,* at 734). The Court held further that "such statements may be

admitted even though the declarant is not a participant in the events and is an unidentified bystander" *(supra,* at 734-735). In *Brown,* the Court upheld the admissibility of two 911 recordings. In the first a caller identified only as "Henry" stated that he was observing a break-in from his apartment across the street and went on to describe the perpetrators *(supra,* at 731). The second call, also from "Henry", reported that " 'one man had been caught but "the white guy [was still] on the roof" ' " and " 'that police backup was needed to catch him' " *(supra,* at 732). This second statement is, in form, very similar to the statement at issue herein.

The Court made clear that the type of corroboration, which will be found sufficient to allow admission of a statement under the present sense impression exception, will depend on the circumstances of each case, and must be largely left to the discretion of the trial court. However, the Court stated that "there must be some evidence in addition to the statements themselves to assure the court that the statements sought to be admitted were made spontaneously and contemporaneously with the events described" (80 NY2d, *supra,* at 737). Thus, in *Brown (supra,* at 736-737) the Court found sufficient corroboration as follows: "In this case, the testimony of the police officers who arrived at the restaurant shortly after the first call and who apprehended two suspects fitting the description of 'one male black and one male white, wearing a blue t-shirt' given by the caller 'Henry' was sufficient corroboration. The police observed what the 911 caller had described only moments before. * * * That the circumstances and events at the scene were still very much as described by 'Henry' corroborates what seems evident from the calls themselves—that 'Henry's' reports were spontaneous and made contemporaneously with the events described."

First, we hold that *Brown* does not require that the statement sought to be admitted itself recite that it is contemporaneous with events observed. Second, it is evident that there is sufficient corroboration under the particular circumstances of this case to sustain the admission of the statement as a present sense impression. Here, the statement itself "he's got the gun" as opposed to "a gun" strongly suggests, without explicitly stating, that the declarant just saw defendant with a handgun. The commotion that the police officers observed also suggested that something had just occurred, lending support to the statement. The officers saw the defendant manipulating what appeared to be a firearm in his waistband immediately

before and after the woman's declaration, and Officer Barrett actually saw the pistol a few moments later.

■ Defendant's other arguments against the admission into evidence of the five live rounds of ammunition discovered in his apartment, during a concededly lawful security sweep, are unpersuasive. Officer Kennedy testified that during the protective security sweep of the apartment he went to the back bedroom to investigate an open window in order to determine whether or not the window had a fire escape. On his way back into the main room of the apartment he saw the five rounds of ammunition in question on the floor. It is clear that the sweep was otherwise completed, with no one other than the defendant having been found in the apartment, when Kennedy saw the ammunition. Defendant testified, however, that the ammunition was located inside his night stand and was not in plain view. After the hearing, the court denied suppression.

The findings with respect to credibility made by the trial court are to be afforded great weight (*People v Prochilo,* 41 NY2d 759, 761). The police were not required to ignore matter in plain view when returning from the back bedroom to the main area of the apartment since he was still acting lawfully (*Arizona v Hicks,* 480 US 321, 326). Furthermore, the defendant's argument that the admission of the five rounds of ammunition constituted an uncharged crime, which established nothing more than propensity, is without merit. The ammunition was relevant circumstantial evidence of defendant's possession of the weapon at the time in question, specifically because the type of ammunition matched the type of weapon described by Officer Barrett and the size of the bullet hole in the wall. The connection between the rounds of ammunition and the charges sought to be proved was not so tenuous as to be improbable (*People v Mirenda,* 23 NY2d 439, 453).

We have reviewed the argument raised by the defendant-appellant regarding his first CPL 440.10 motion based upon an alleged *Rosario* violation (*People v Rosario,* 9 NY2d 286, 289, *cert denied* 368 US 866) and find that it is meritless.

Accordingly, the judgment of Supreme Court, New York County (John A. K. Bradley, J.), rendered April 13, 1993, convicting defendant, after a jury trial, of two counts of criminal possession of a weapon in the third degree, and sentencing him, as a second felony offender, to two concurrent terms of 3 to 6 years in prison, unanimously affirmed; orders

of the same court and Justice entered October 1, 1993 and June 29, 1994, which denied defendant's motions to vacate the same judgment of conviction, unanimously affirmed.

ROSENBERGER, J. P., ELLERIN, WILLIAMS and TOM, JJ., concur.

Judgment, Supreme Court, New York County, rendered April 13, 1993, and orders, same court and Justice, entered October 1, 1993 and June 29, 1994, unanimously affirmed.