OPINION OF THE COURT
Frederic S. Berman, J.
Subsequent to being sentenced as a result of a guilty plea which followed a suppression hearing, the defendant, upon learning that one of the officers testifying at the hearing had been indicted in connection with the 30th Precinct investigation, now moves to aside the judgment on the grounds of a Brady violation. This case addresses one issue: assuming that, by pleading guilty, the defendant did not forfeit the right to assert a postjudgment claim premised on an alleged violation of Brady v Maryland (373 US 83 [1963]).[1] did the government’s undisclosure of information pertaining to the venal activity of a police officer who participated in the defendant’s arrest and testified in a Mapp hearing taint the guilty plea and violate Brady?
On January 5, 1994, judgment was entered against the defendant, Carolyn Burney, convicting her by guilty plea of criminal possession of a controlled substance in the second degree. (Penal Law § 220.18.) She received a sentence of four years to life, which she is currently serving. The defendant has requested vacatur of judgment because the People allegedly withheld from her Brady material (CPL 440.10 [1] [h]), and thus violated her due process rights under both the Federal and New York Constitutions. (US Const, 14th Amend, § 1; NY Const, art I, § 6.) She contends that, had the material been disclosed, the court would not have denied her motion to suppress physical evidence and she would not have pleaded guilty. Thus, she requests that the court vacate the defendant’s conviction and reopen the Mapp hearing. In response, the People assert that they did not violate Brady and that whatever nondisclosed material which they possessed and which may fall within the scope of Brady was impeachment evidence immaterial to the Mapp hearing issues.[2]
*438 FACTS
The defendant was indicted for criminal possession of a controlled substance in the first degree. (Penal Law § 220.21.) Following indictment, she filed an omnibus motion seeking, inter alia, suppression of physical evidence obtained by the police and a demand for Brady material. The demand included a general request for the prior bad acts and criminal records of all prosecution witnesses and evidence establishing their propensity for being untruthful. The defendant did not specify to which prosecution witness her Brady demand applied, nor did she advert to specific evidence of witness misdeeds or criminal conduct.
A Mapp hearing was granted. At the hearing Sergeant Anthony Cesarano of the 30th Precinct testified for the People during their case in chief. The defendant testified and in rebuttal the People called Officer Michael Walsh, also of the 30th Precinct. Cesarano stated that on November 14, 1992, while on routine patrol in the vicinity of 139th Street and Riverside Drive in Manhattan, he and Walsh stopped the defendant’s car because of a traffic infraction. Ultimately, Cesarano entered the car and seized suspected narcotics therefrom. The defendant corroborated Cesarano’s and Walsh’s accounts, but differed with Cesarano regarding the circumstances of the search. Nevertheless, she admitted to possessing the seized contraband. Walsh substantiated Cesarano’s account as to the reasons for the car stop, but he did not see Cesarano conduct the subject search and seizure. Indeed, Walsh could not directly implicate the defendant in any wrongdoing. Ultimately, the suppression motion was denied.
On October 26, 1993, in the presence of and after having consulted able counsel before an allocution in compliance with Boykin v Alabama (395 US 238 [1969]), the defendant knowingly, intelligently, and voluntarily pleaded guilty to the crime with which she was charged. During the allocution, the defendant unequivocally admitted to knowingly possessing over four ounces of cocaine in her car on November 14, 1992 and that she was, in fact, guilty of this crime. On January 5, 1994, she successfully moved to withdraw her prior guilty plea and reentered a valid guilty plea to the reduced charge of criminal possession of a controlled substance in the second degree. The court then imposed the sentence which she is presently serv *439 ing. When asked before the imposition of sentence if she had anything to say to the court, the defendant responded in the negative. She never communicated to the court potential trial defenses and never proclaimed her innocence before the entry of judgment.
Approximately three months later, Walsh was arrested for having engaged in corruption. Following entry of the court’s suppression order but three days prior to the defendant’s interposition of her initial guilty plea, the Official Corruption Unit of the New York District Attorney (OCU) received information that Walsh had stolen money. One week after such interposition, OCU learned that he was involved in the theft and sale of narcotics. Between December 16, 1993 and January 2, 1994, OCU received word that he was steeped in more venal activities. Consequently, Federal and State prosecutors charged him with numerous crimes and he pleaded guilty in both Federal and State courts for his transgressions. Significantly, no party here asserts that these misdeeds related to the instant matter or that Cesarano was implicated in the corruption.
In an affidavit appended to the defendant’s motion, her trial counsel stated that, prior to judgment, he had not received from the People any information regarding Walsh’s illegalities, and the prosecution does not dispute this fact. Finally, counsel stated that, had he been aware of the investigation of Walsh, he would have advised the defendant not to plead guilty.
DISCUSSION
Brady and progeny do not account for the withholding of Brady material prior to the entry of a guilty plea. And, the Supreme Court, the Court of Appeals, and the First Department have not determined if a defendant who pleads guilty forfeits the right to mount a postjudgment Brady claim. However, given the trend within the Federal circuits rejecting the theory of forfeiture and permitting defendants to pursue such claims (see, Miller v Angliker, 848 F2d 1312, 1320 [1988], cert denied 488 US 890 [1988]; Tate v Wood, 963 F2d 20 [2d Cir 1992]; Campbell v Marshall, 769 F2d 314 [6th Cir 1985], cert denied sub nom. Campbell v Morris, 475 US 1048 [1986]; White v United States, 858 F2d 416 [8th Cir 1988], cert denied 489 US 1029 [1989]; Sanchez v United States, 50 F3d 1448 [9th Cir 1995]; United States v Wright, 43 F3d 491 [10th Cir 1994]), State court decisions following this trend (People v Ortiz, 127 AD2d 305 [3d Dept 1987], lv denied 70 NY2d 652 [1987]; *440 People v Benard, 163 Misc 2d. 176 [Sup Ct, NY County 1994]; People v Curry, 164 Misc 2d 969 [Sup Ct, NY County 1995]), and "the importance in the integrity of our criminal justice system that guilty pleas be knowing and-intelligent” (United States v Wright, 43 F3d, at 496, supra) forfeiture is inconsistent with Federal and State due process. (Contra, People v Day, 150 AD2d 595 [2d Dept 1989], lv denied 74 NY2d 807 [1989]; People v Thompson, 174 AD2d 702 [2d Dept 1991], lv denied 79 NY2d 833 [1991].)
To address the merits of the defendant’s claim, the court will employ an approach representing a fusion of analyses used by Miller (supra), Tate (supra), People v Armer (119 AD2d 930 [3d Dept]) and Campbell (supra). Preliminarily, not dispositive are the statements of counsel that there would have been no guilty plea had the alleged Brady evidence been divulged. Certainly, such assertions are relevant and important but not controlling. In Miller and Tate the Second Circuit strongly emphasized that nisi prius courts should make "an objective evaluation of the likely impact that the withheld information would have had on typical * * * [defense] counsel” (Miller v Angliker, 848 F2d, at 1323, supra [emphasis added]). And, no defendant alone may determine the materiality of undisclosed information, and, thus, whether it falls under Brady. (Pennsylvania v Ritchie, 480 US 39, 59 [1987].)
Alleged Brady evidence must be material to a defendant’s guilt. (Brady v Maryland, 373 US, at 87, supra.) In Armer (supra) the Third Department focused on the element of materiality while considering a postguilty plea Brady claim. Applying the standard promulgated in United States v Bagley (473 US 667 [1985]), and later repudiated by People v Vilardi (76 NY2d 67 [1990]) as a matter of New York constitutional law, Armer determined: "[T]he question here is whether it is reasonably probable that defendant would not have pleaded guilty during the trial if he had received the * * * [exculpatory] information”. (119 AD2d, at 932, supra.) Under Armer, resolution of this question determines the materiality of the information under Brady. Also employed by Miller and Tate (supra), this standard is an objective one "resolved largely on the basis of the persuasiveness of the withheld evidence”. (Tate v Wood, 963 F2d, at 24 [citation omitted]; Miller v Angliker, 848 F2d, at 1323.)
Campbell (supra) entailed a postguilty plea charge that the prosecution had withheld evidence supporting Campbell’s self-defense claim. Thus, assuming the prosecution violated Brady, *441 the issue in Campbell was whether the suppression of such evidence "renders involuntary [a defendant’s] otherwise voluntary plea, given without knowledge of this evidence.” (Supra, at 318.) After thoroughly reviewing Tollett v Henderson (411 US 258 [1973]), and the related "Brady Trilogy” (Brady v United States, 397 US 742 [1970], supra; McMann v Richardson, 397 US 759 [1970]; Parker v North Carolina, 397 US 790 [1970]), Campbell concluded that, though these cases did not completely bar postjudgment consideration of claimed unconstitutional deprivations preceding guilty pleas, they did support rejection of Campbell’s petition for habeas corpus relief.
The Sixth Circuit commenced its analysis of Campbell’s claim by holding that the prosecution’s withholding of the alleged Brady evidence did not "in any way detract from the credible factual basis for Campbell’s plea admitted in his own statements at the plea proceeding” (769 F2d, at 321, supra), which statements completely satisfied his factual guilt. In the court’s view, Tollett (supra) and the Brady Trilogy underscored a defendant’s admission of liability in open court. The court then compared the alleged violation in Campbell’s case with those infringements alleged in the Brady Trilogy and determined that Campbell suffered no greater prejudice than the allegedly aggrieved parties endured in those decisions. Significantly, Campbell’s plea was premised on the advice of competent counsel and was not ill-advised. Moreover, in Campbell there was not the same assurance of a constitutional violation as was so in the Brady Trilogy because there was no authoritative support for the proposition that the undisclosure of Brady information before trial infringes upon a defendant’s due process rights. Also, in evaluating the suppressed evidence itself, the Court held that it was not certain that Campbell would have been entitled to claim prejudice had his case gone to trial. Finally, Campbell’s holding was supported by Fambo v Smith (433 F Supp 590 [WD NY 1977], affd 565 F2d 233 [2d Cir 1977]), which concluded that a prosecutor’s violation of Brady did not detract from Fambo’s voluntary, intelligent, fair, and advantageous guilty plea.
In summary Campbell held that in light of the Brady Trilogy, Tollett (supra) and Fambo (supra), each of which "contained instances of state conduct which was at least reprehensible, if not clearly unconstitutional, each court still evaluated the validity of the [guilty] plea in light of all the attendant circumstances.” (Campbell v Marshall, 769 F2d, at 323, supra [emphasis added].) In Campbell, "as in those cases, the record *442 showed the assistance of counsel, a plea-taking procedure compliant with Boykin v Alabama, and factual basis for the plea. These circumstances must go a long way toward protecting the plea-taking event from * * * collateral attack.” (769 F2d, at 323-324, supra.)
Tangentially touched upon in Campbell (supra) and not considered by either Miller or Armer (supra) is an important ingredient discussed in Brady v United States. The Supreme Court acknowledged: "We would have serious doubts about this case if the encouragement of guilty pleas by offers of leniency substantially increased the likelihood that defendants, advised by competent counsel would falsely condemn themselves. But our view is to the contrary and is based on our expectations that courts will satisfy themselves that pleas of guilty are voluntarily and intelligently made by competent defendants with adequate advice of counsel and that there is nothing to question the accuracy and reliability of the defendant’s admissions that they committed the crimes with which they are charged. In the case before us, nothing in the record impeaches Brady’s plea or suggests that his admissions in open court are anything but the truth.” (Supra, at 758 [emphasis added].) Thus, a highly critical factor is whether a guilty plea is accurate, reliable, and truthful. Obviously, underlying this component is a concern that a seemingly valid guilty plea is interposed by an innocent defendant. (See, People v Curry, supra.) And, such a concern becomes most pressing when an innocent is victimized by the prosecution’s unlawful suppression of exculpatory information. Thus, to avoid this unconscionable outcome, courts reviewing postguilty plea Brady claims must ascertain if a defendant’s admission of liability during a plea allocution reflects the truth and is not a false condemnation. (See, Brady v United States, supra; Fambo v Smith, supra.)
Accordingly, in synthesizing the respective approaches utilized in Campbell (supra) and in Miller or Armer (supra), the court will consider the following, applicable to the Federal and State claims, in determining if the defendant’s guilty plea was tainted by the undisclosure of alleged Brady evidence: (1) Whether in pleading guilty the defendant was represented by competent counsel and whether the plea allocution procedure complied with Boykin (supra); (2) The nature of the allegedly suppressed Brady evidence viewed in the over-all context of this case; (3) Whether the defendant’s guilty plea had a credible factual basis and whether her factual confession tendered in court was accurate, reliable, and truthful; (4) A comparison *443 of the prejudice allegedly suffered by the defendant in this case as opposed to that suffered by defendants in other cases involving postguilty plea Brady contentions; and (5) As to the issue of materiality, whether the defendant would have pleaded guilty had she been aware of the subject evidence. (See, Miller v Angliker, supra; Tate v Wood, supra; People v Armer, supra.) Assuming such cognizance, this last prong focuses on what a defendant and reasonable and competent counsel would have decided with respect to a plea offer. (Miller v Angliker, supra.) This approach should balance society’s interests in preserving accurate, reliable, and truthful guilty pleas and in assuring that such pleas are knowing, voluntary, intelligent and not false condemnations.
Assuming, arguendo, the People had an obligation under Brady to divulge Walsh’s misdeeds, the defendant’s guilty plea was not tainted by nondisclosure and represented a just and sound result. First, the defendant was represented by competent counsel and submitted to a plea allocution in compliance with Boykin (supra). Putting aside the nondisclosure question, her guilty plea was knowing, intelligent, and voluntary. Second, this case entailed the withholding of impeachment evidence of a peripheral witness whose trial testimony could not have established the defendant’s factual liability and who did not witness the search and seizure. The impeachment evidence consisted of collateral bad acts (see, People v Vasquez, 214 AD2d 93 [1st Dept 1995]) and did not pertain to the facts of this case or to the People’s primary witness. Significantly, the defendant does not indicate what defense she would have proffered at trial and how the omitted evidence would have had a bearing on the same. Third, here, on two occasions the defendant unequivocally acknowledged her factual liability, first at the Mapp hearing, and, second, during her plea allocution. Her confessions were further corroborated by Sergeant Cesarano during the Mapp hearing. There is nothing in the record which suggests that the defendant’s factual admissions were anything other than credible, accurate, reliable, and truthful. This case does not entail a defendant falsely condemning herself solely to receive an advantageous plea bargain. Fourth, the defendant suffered no greater prejudice than those defendants in Armer (supra [leaving intact guilty plea allegedly occasioned by suppression of exculpatory identification evidence]); Campbell (supra); White (supra [upholding guilty plea resulting from alleged nondisclosure of government deal offered to a witness and recantation evidence]); People v Rodriguez (NYLJ, June *444 12, 1995, at 29, col 4 [Sup Ct] [sustaining guilty plea allegedly flowing from undisclosure of uncorroborated evidence that police officer had stolen money during car stop]); Fambo (supra [preserving guilty plea supported by the case facts but supposedly derived from the undisclosure of evidence establishing nonguilt of one crime but an attempt thereof]); United States v Wright (supra [affirming guilty plea notwithstanding nondisclosure of immunity grants to codefendants]); United States v Wolczik (480 F Supp 1205 [WD Pa 1979] [upholding guilty plea despite suppression of coconspirators’ statements implicating someone other than defendant]); People v Curry (164 Misc 2d 969, supra [overturning guilty plea in case wherein defendant protested his innocence, claimed that police stole his money, and police officer-witness was subject of serious allegation of theft]) and less prejudice than the defendants in Miller (supra [invalidating guilty plea because prosecutor withheld evidence that someone other than defendant committed crimes]), and Tate (supra [reversing summary denial of habeas corpus petition alleging undisclosure of evidence corroborating Tate’s self-defense claim]). Thus, here, an argument for prejudice is unavailing.
Finally, the defendant has not shown the materiality of the undisclosed information. To prove the element of. materiality she bears a heavy burden. (Tate v Wood, 963 F2d, at 25, supra.) As for the defendant’s Federal due process claim, the materiality test promulgated by Armer (supra), Miller (supra), and Tate applies whether or not the undisclosed information had been specifically requested by the defendant. Conversely, pursuant to the New York Constitution, the nature of the request, if any, will trigger the applicability of a particular materiality standard. (People v Vilardi, 76 NY2d 67, supra.) Here, the defendant’s Brady demands were general since they were not directed to any witness or to any specific information about such witness. It is true that the defendant’s request was not for " 'all Brady material’ or for 'anything exculpatory’ ” (United States v Agurs, 427 US 97, 106). But, it was not akin to the pretrial request in Brady for the particular extrajudicial statement of an identified witness, which request "gave the prosecution notice of exactly what the defense desired.” (United States v Agurs, 427 US, at 106 [emphasis added].) Accordingly, applicable to the defendant’s State claim is the same reasonable probability test used for the defendant’s Federal contention. (See, People v Vasquez, 214 AD2d, at 101, supra.)
Thus, based on a review of the entire record, and the application of the same objective materiality standard to both *445 constitutional claims, the court concludes that the defendant has failed to demonstrate that there is a reasonable probability that she would not have pleaded guilty had she known of the withheld evidence. The defendant does not establish the value or persuasiveness of the evidence in the context of a trial. (Tate v Wood, supra;, compare, People v Curry, supra.) Instead, she indicates that the evidence would have impugned Officer Walsh’s credibility, which result, in turn, could have undermined Sergeant Cesarano’s testimony and any notion of the search and seizure’s validity. However, this argument is irrelevant under a formula focusing on the plea-tendering process and on a defendant’s hypothetical evaluation of her prospects for success at trial — not a suppression hearing — assuming disclosure. And, the defendant’s contention is unavailing since, as indicated infra, the court would not have granted such an application to revisit the search and seizure issue. Although, the defendant’s trial counsel indicated that he would not have counseled a guilty plea in this case had he been aware of the undisclosed information, this statement alone is not dispositive, since the court must address the materiality issue objectively by evaluating the persuasiveness of the withheld evidence (Tate v Wood, 963 F2d, at 24, supra) and what a defendant or reasonable and competent counsel would have done. Unlike trial counsel, the defendant herself does not aver that she would not have pleaded or re-pleaded guilty had disclosure occurred and she did not protest her innocence at any time prior to entry of judgment. (See, People v Curry, supra.) She does not specify a defense which she would have interposed at trial and show the relevancy of the undisclosed evidence to such defense. (See, People v Curry, supra.) Had the defendant been aware of the undisclosed information at the time she re-pleaded guilty, and had a new challenge to the suppression hearing decision been rejected, it is reasonably probable that she, cognizant of her own factual guilt, Cesarano’s unimpugned testimony, Walsh’s role in this case, and the nature of the undisclosed evidence, would have avoided trial to receive the highly favorable plea bargain. And, in view of these factors, it is more than arguable that reasonable and competent counsel would have endorsed such a tack.
Consequently, the undisclosed information is not Brady evidence because its materiality has not been proven, and because the defendant has not established that it pertains to a witness whose reliability was determinative of guilt. (Giglio v United States, 405 US 150 [1972].)
*446 The law does not entitle the defendant to disavow her confessions to her factual guilt merely because the People may have had a case weaker than anticipated. (Brady v United States, 397 US, at 757, supra.) The defendant’s decision in this case to forego litigation by pleading guilty must stand because her plea allocution was legally sound, the record establishes unequivocally that she was, in fact, guilty of the crime of which she was convicted, because of the nature of the undisclosed evidence, and because she has not shown its materiality under Armer (supra), Miller (supra) and Tate (supra). Thus, the judgment in this case shall remain undisturbed.
Finally, had vacatur been granted, the court would have denied the defendant’s motion to reopen the suppression hearing because there is no reasonable probability that the court’s suppression determination would hav e been different. (See, United States v Bagley; People v Vilardi; People v Vasquez, supra.)
CONCLUSION
For the foregoing reasons, the court denies the defendant’s motion to set aside judgment in all respects. The above constitutes the opinion, decision, and order of the court.

. Here, Brady v Maryland and Brady v United States (397 US 742 [1970]) are cited throughout. When the court refers to "Brady” without more, that term alludes to the former decision. Advertence to the "Brady Trilogy” pertains to the latter.

. Upon reviewing the submissions of the litigants and the record of this case, the court determined that there were no factual issues in dispute which *438 would warrant a hearing. Hence, summary disposition of this case was deemed appropriate.